## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert A. St. George,<br><br>                    Plaintiff,<br><br>v.<br><br>BNSF Railway Company, a Delaware<br>Corporation,<br><br>                    Defendant. | Case No. 12-cv-2592 (SRN/FLN)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Cortney S. LeNeave and Richard L. Carlson, Hunegs, LeNeave & Kvas, PA, 1000 Twelve Oaks Center Drive, Suite 101, Wayzata, MN 55391, for Plaintiff.

James F. Mewborn and Sally J. Ferguson, Arthur Chapman Kettering Smetak & Pikala, PA, 81 South 9th Street, Suite 500, Minneapolis, MN 55402-3214; and Stephen M. Warner, O'Neill & Murphy, 332 Minnesota Street, Suite W2600, St Paul, MN 55101, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

        This matter is before the Court on Defendant's Motion for Partial Summary Judgment on Plaintiff's Counts Two and Three [Doc. No. 8].  On March 5, 2014, Defendant submitted a supporting memorandum [Doc. No. 10] and one affidavit with several attached exhibits [Doc. No. 11].  On March 31, 2014, Plaintiff filed a Brief in Opposition to Defendant's Motion for Summary Judgment [Doc. No. 15], as well as an affidavit with several attached exhibits [Doc. No. 16].  Defendant filed a reply brief [Doc. No. 17], and an affidavit with attached exhibits [Doc. No. 18] on April 14, 2014.  The

matter was heard on April 16, 2014.  For the reasons set forth below, Defendant's Partial

Motion for Summary Judgment is denied.

## II.    BACKGROUND

### A.  The Parties and Plaintiff's Claims

Plaintiff Robert A. St. George ("Plaintiff" or "St. George") was employed by

Defendant BNSF Railway Company ("Defendant" or "BNSF") from May 1973 until

November 2009.  (Compl. ¶ 8 [Doc. No. 1]; Answer ¶ 8 [Doc. No. 2].)  Defendant is a

corporation that served as an "interstate carrier engaged in interstate commerce through

several states."  (Answer ¶ 3 [Doc. No. 2].)  While Plaintiff was employed by BNSF, he

worked as a switchman and brakeman primarily in Defendant's Superior, Wisconsin

yard.  (Compl. ¶¶ 1-3 [Doc. No. 1]; Affidavit of Richard L. Carlson ("Carlson Aff."), Ex.

1 at 22-23 [Doc. No. 16].)  St. George brought this lawsuit against BNSF in October

2012, pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51-60,

and the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. §§ 20301-20306.  (Id. ¶¶ 1,

19.)

In his Complaint [Doc. No. 1], Plaintiff states three counts against BNSF: (1)

Plaintiff seeks damages under the FELA for injuries allegedly suffered during an incident

on October 13, 2009, while he worked as a switchman/trainman for Defendant (id. ¶¶ 1-

6); (2) Plaintiff seeks damages under the FELA for musculoskeletal dysfunction and

impairment (MSD) allegedly caused by cumulative trauma associated with his

employment as a swtichman/trainman for Defendant (id. ¶¶ 7-17); and (3) Plaintiff also

seeks damages for cumulative injuries caused by FSAA violations under the FELA,

which he allegedly suffered as a result of improperly inspected and maintained hand

brakes, pinlifters, couplers, and other safety appliances (id. ¶ 19). Plaintiff's Counts Two

and Three are challenged in Defendant's Motion for Summary Judgment; therefore, the

Court focuses its attention solely on these Counts. (Def.'s Mot. for Summ. J. [Doc. No.

8].)

### B. Plaintiff's Health and Injuries

Plaintiff is 64 years old. (Carlson Aff., Ex. 1 at 9 [Doc. No. 16].) He served in the

U.S. Army from 1969 through 1971. (Id. at 11, 15, 19.) While in the Army, St. George

operated heavy equipment to clear jungle and build roads in Vietnam. (Id. at 15-16.)

Four years ago Plaintiff received partial disability status from the U.S. Department of

Veterans Affairs because they determined that exposure to Agent Orange in Vietnam

caused him to develop diabetes. (Id.)

After his time in the Army, Plaintiff worked several odd jobs until he was hired by

Defendant in February, 1973. (Id. at 19-21, 22.) Plaintiff worked for Defendant as a

switchman/brakeman until he retired on February 2, 2010. (Id. at 61-62.) He stopped

working because he had planned to retire at age 60, and because his shoulder pain

prohibited him from physically completing his work. (Id.)

Plaintiff admits that he began experiencing aches and pains in his shoulders in

2006.[1] (Carlson Aff., Ex. 1 at 68-70 [Doc. No. 16]; Mewborn Aff., Ex. E. [Doc. No. 11-

---

[1]    Plaintiff was also treated for various other injuries resulting from work related
incidents that are not at issue in this case. (Carlson Aff., Ex. 1 at 27-32 [Doc. No. 16].)
Notably, Plaintiff suffered a separate and unrelated neck injury while at work in 1989.
(Mewborn Aff., Ex. B, at 29-30 [Doc. No. 11].) The injury was a result of a television,

1].)  In fact, Plaintiff stated his shoulder "problems" may have started up to ten years ago. (Carlson Aff., Ex. 1 at 95-96 [Doc. No. 16].)  St. George characterized these "problems" as primarily "aches."  (Id.; Mewborn Aff., Ex. I at 5 [Doc. No. 18-1].)  To relieve the pain, St. George took "ibuprofen" on a daily basis, and felt "fine" after taking the medication.  (Carlson Aff., Ex. 1 at 69 [Doc. No. 16].)  According to Plaintiff's "BNSF Railway Company, Employee Monthly Earnings History," St. George's earnings remained consistent from 2005 to 2009.  (Carlson Aff., Ex. 6 [Doc. No. 16].)  Plaintiff contends that these earnings statements "show that any shoulder symptoms did not adversely affect his ability to work as switchman/brakeman" during that time period. (Pl.'s Brief in Opp'n at 13 [Doc. No. 15].)

St. George's shoulder pain "started really getting bad…the last few months" before he retired.  (Carlson Aff., Ex. 1 at 68-70, 77 [Doc. No. 16].)  He explains that initially he experienced stiffness and soreness, which radiated from his neck to his shoulders.  (Carlson Aff., Ex. 1 at 140 [Doc. No. 16].)  However, the pain progressed, and eventually it spread to the joints toward the outside of his shoulder.  (Id.)  The pain made it difficult for St. George to lift his arms overhead or complete any activity that

---

which was used for remote control monitoring, hitting the back of his head while he was exiting a bathroom at work.  (Carlson Aff., Ex. 1 at 29-30 [Doc. No. 16]; Carlson Aff., Ex. 7 at 4 [Doc. No. 16].)  Although Plaintiff continues to have a stiff neck and pains that run down his neck and shoulders, this pain is distinct and separate from the cumulative injury he alleges in Count Two.  (Carlson Aff., Ex. 1 at 67, 139-40 [Doc. No. 16].)  The treatment he received for this injury is documented in the January 15, 1992 medical records of Dr. Robert J. Torgrimson.  (Carlson Aff. Ex. 3 at 1-3 [Doc. No. 16].)

required him to lift his arms overhead.  (Id.)  In fact, Plaintiff contends that during the last

few months of 2009, "[he] couldn't do [his] job anymore."  (Id. at 68-70.)

Dr. Janus D. Butcher is currently Plaintiff's treating physician for his cumulative

shoulder injury.[2]  (Carlson Aff., Ex. 1 at 110 [Doc. No. 16].)  St. George first visited Dr.

Butcher for his shoulder pain on December 8, 2009.  (Mewborn Aff., Ex. D [Doc. No.

11].)  During that doctor's appointment, Plaintiff informed Dr. Butcher that this was the

first time that his shoulder pain inhibited him from completing his work.  (Id. at 1-2.)

Upon completing a physical examination and reviewing x-rays, Dr. Butcher concluded

that St. George suffered from "[r]otator cuff impingement with spur."  (Id. at 2.)

Plaintiff completed an Employee Personal Injury/Occupational Illness Report on

December 3, 2009 because "[he] was having a hard time doing [his] job and [he] had a lot

of pain in [his] shoulders," which radiated down from his neck.  (Carlson Aff., Ex. 1 at

66-67 [Doc. No. 16]; Mewborn Aff., Ex. E [Doc. No. 11].)  In the statement, Plaintiff

alleged that this injury was a result of "36 years of riding boxcars with slack action, hard

to throw switches, handbrakes, hard to hang air hoses, heavy pinlifters."  (Mewborn Aff.,

Ex. E [Doc. No. 11].)  As a result of completing this report, Plaintiff was interviewed

about his injuries by BNSF's claim representative, Jeff Johnson.  (Mewborn Aff., Ex. B

at 11 [Doc. No. 11].)  During the interview Plaintiff explained that "[he] knew [the

injury] was related to work" based on the timing of the pain intensity.  (Id. at 39.)

---

[2]      Dr. Butcher is also Plaintiff's treating physician for an Achilles tendon injury that
St. George allegedly suffered on October 13, 2009.  (Carlson Aff., Ex. 5 [Doc. No. 16].)
This leg injury is the basis for Plaintiff's claim in Count One of his Complaint.  (See
Compl. ¶¶ 1-6 [Doc. No. 1].)  Since Defendant's Motion to Dismiss is focused on
Plaintiff's Counts Two and Three, the Court does not address the Achilles tendon injury.

Plaintiff alleges that during this interview Johnson informed Plaintiff that he had three years from the date of filing an injury report to pursue a legal claim against BNSF. (Carlson Aff., Ex. 1 at 141-42 [Doc. No. 16].)

### C. Count Two: Federal Employers' Liability Act, 45 U.S.C. §§ 51-60

Pursuant to the FELA, Defendant, a common carrier by railroad, has a duty to take reasonable care to provide a safe workplace and safe equipment. See 45 U.S.C. § 51. Liability attaches if BNSF fails to provide reasonably safe equipment or a reasonably safe workplace. Id.

In Count Two of Plaintiff's Complaint, St. George alleges that his permanent cumulative shoulder injury, described in detail above, is a result of Defendant's failure to provide a safe workplace or safe equipment, which is required the FELA. (See Compl. ¶¶ 7-17 [Doc. No. 1].) Specifically, St. George alleges that his injury was caused by moving on and off equipment, as well as operating switches, hand brakes, pinlifters, couplers, and other equipment that Plaintiff claims was unsafe and defective and improperly maintained by Defendant. (Mewborn Aff., Ex. A at 1-2, 3-4 [Doc. No. 11-1]; Carlson Aff., Ex. 2 at 4 [Doc. No. 16].)

### D. Count Three: Federal Safety Appliance Act, 49 U.S.C. §§ 20301-20306

The FSAA requires that a railroad equip its railcar with specific properly working appliances, including an efficient brake system, couplers, and handbrakes. See 49 U.S.C. §§ 20301-20306. The FSAA's definition of "couplers" includes pinlifters, when there is evidence that the pinlifter operated abnormally and prevented the cars from uncoupling.

Phillips v. Cheapeake & Ohio Ry. Co., 475 F.2d 22, 25 (4th Cir. 1973).  Similarly, the

FSAA's definition of "brake system" encompasses air hoses used for air brakes.

McGowan v. Wisconsin Cent. Ltd., No. 04-C-0170, 2005 WL 2077355, at *4 (E.D. Wis.

Aug. 26, 2005); Orchelle v. CSX Transportation, Inc., 574 So.2d 749 (Ala.1990)

(applying the FSAA where a railroad switchman injured himself attempting to connect air

hoses for air brakes on rail cars that were at a standstill).

Plaintiff alleges that in violation of the FSAA, Defendant hauled or permitted to be

hauled, or used on its line of railway, railcars equipped with unsafe and defective hand

brakes, pinlifters, and couplers that were inefficient insofar as they were hard to operate,

thereby causing Plaintiff's injuries.  (Mewborn Aff., Ex. A at 1-2, 3-4 [Doc. No. 11-1];

Pl.'s Brief in Opp'n at 31 [Doc. No. 15].)  Although the FSAA does not provide a private

cause of action for violations of the statute, an employee may recover for injuries caused

by FSAA violations under the FELA.  See Crane v. Cedar Rapids & Iowa City Ry. Co.,

395 U.S. 164, 166 (1969).

Plaintiff admits that he cannot recall "any specific car numbers" or specific pieces

of equipment that were defective.  (Carlson Aff., Ex. 1 at 103-04 [Doc. No. 16].)

Nonetheless, in Plaintiff's Answers to Defendant's Interrogatories Set II, St. George

contends that "[w]hile [he] did not keep records as to specific car numbers or dates or

times when [he] had to work with railcars equipped with handbrakes with short release

handles, [he] did report those cars to the trainmasters on duty."  (Carlson Aff., Ex. 2 at 2-

3 [Doc. No. 16].)  He would also report defective railcar couplers to the yardmaster and

carman on duty.  (Id. at 4.)  Similarly, St. George narrowed down which rail cars had

defective air hoses.  He stated that the cars which had misaligned air hoses were "the ADM cars with the UELX numbers, Allrail older coal cars and what they call battleships."  (Id.)  He also "always reported those cars at the safety meetings with Defendant and was told that as the cars came in for repair, those hoses would be replaced with newer, soft hoses."  (Id.)  Plaintiff testified during his deposition that frequently handbrakes and pinlifters did not work as intended.  (Carlson Aff., Ex. 1 at 72-73, 78 [Doc. No. 16].)  In fact, St. George was able to narrow down which rail cars had defective pinlifters.  He alleged that "[p]aper box cars with cushioned underframes and three bars on the pinlifters [sic]" had the defective pinlifters attached.  (Carlson Aff., Ex. 2 at 3 [Doc. No. 16].)  Plaintiff would also report those cars to the trainmasters on duty. (Id.)  In his response to BNSF's interrogatories, Plaintiff implied that "Defendant's records" contain information about specific car numbers that had defective equipment. (See id. at 2-4.)

## III.    DISCUSSION

Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp., 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Id. at 323.  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

Moreover, summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Defendant seeks summary judgment on Plaintiff's Counts Two and Three.

### A.  Count II: FELA and Statute of Limitations

As discussed above, in Count Two of his Complaint, Plaintiff asserts claims based on the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60.  Under the FELA:

> [e]very common carrier by railroad while engaging in commerce…shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce…for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.  Therefore, Defendant, a common carrier by railroad, is liable if it negligently fails to provide reasonably safe equipment or a reasonably safe workplace.

Id.; see Bailey v. Central Vermont Ry., Inc., 319 U.S. 350, 352-53 (1943) (holding that under the FELA, an employer has a duty to provide a reasonably safe place to work); Vidlak v. Burlington Northern Railroad, 16 F.3d 1229 (8th Cir. 1993) (explaining that "[t]o establish [the defendant's] negligence, [the plaintiff] must show [the defendant] breached its duty to provide [the plaintiff] with a reasonably safe workplace").  The United States Court of Appeals for the Eighth Circuit explained in Fletcher v. Union Pacific Railroad Co. that "[a]n employee's claim under the FELA does not depend on showing that the injury was caused by a particular negligent act, but may be caused by the cumulative effect of a series of incidents, or due to the employee's weakened condition."  621 F.2d 902, 909 (8th Cir. 1980) (internal citations omitted).

Defendant argues that summary judgment is appropriate for Plaintiff's Count Two FELA claims because FELA's three-year statute of limitations bars relief.  (Def.'s Mem. of Law at 6-9 [Doc. No. 10].)  Pursuant to the FELA, "[n]o action shall be maintained…unless commenced within three years from the day the cause of action accrued."  45 U.S.C. § 56.  However, "[a] railroad is equitably estopped from asserting the statute of limitations as a defense if misrepresentations by either it or its agent caused the employee's failure to bring his action within the three-year period."  Fletcher, 651 F.2d at 906 (citation omitted).

Plaintiff asserts two arguments in response to Defendant's claim.  First, St. George contends that whether he should have known that his cumulative injury was caused by work is a question of fact for a jury, not the Court.  (Pl.'s Brief in Opp'n at 2 [Doc. No. 15].)  Second, Plaintiff alleges that BNSF is equitably estopped from asserting the statute

of limitations as a defense because St. George relied on Defendant's claim representative who told Plaintiff he had three years in which to bring a legal claim from the time he filed a personal injury report.  (Id.)

St. George filed this lawsuit on October 11, 2012.  Therefore, in order for Defendant to prevail on its motion, BNSF must demonstrate that Plaintiff knew or should have known that his cumulative shoulder injuries were caused by his work before October 11, 2009.

### 1.  Date Plaintiff's Injury "Accrued"

The parties disagree as to when Plaintiff's injury or cause of action "accrued." Since Plaintiff alleges a cumulative shoulder injury caused by years of employment at BNSF, the date at which Plaintiff's shoulder aches became a cognizable injury is a fact-sensitive inquiry.

The United States Supreme Court first articulated the "discovery rule," or the point in time a cumulative injury accrues under the FELA, in Urie v. Thompson.  The Court held that a cumulative injury claim accrues when a reasonable person knows or should know of both the symptoms of his injury, and the potential cause of his injury. See Urie v. Thompson, 337 U.S. 163, 169-71 (1949).  In Urie, the plaintiff contracted a pulmonary disease that was "caused by continuous inhalation of silica dust" from working on the railroad from 1910-1940.  Id. at 169.  The disease debilitated plaintiff and eventually forced him to cease work in 1940.  Id. at 166.  The defendant contended that the "[the plaintiff's] 'cause of action' must be deemed to have 'accrued' longer than three years before the institution of this action" since the plaintiff likely contracted the disease

11

much earlier in his career.  Id. at 169.  The Supreme Court disagreed.  The Court

explained that if it adopted the defendant's perspective then that "would mean that at

some past moment in time, unknown and inherently unknowable even in retrospect, [the

plaintiff] was charged with knowledge of the slow and tragic disintegration of his lungs."

Id.  Instead, the Supreme Court held that "the afflicted employee can be held to be

'injured' only when the accumulated effects of the deleterious substance manifest

themselves." Id. at 170 (internal quotations and citation omitted).  As applied to Urie, the

Court explained that the plaintiff's injury did not accrue until "[he] became too ill to

work" and received a diagnosis for his condition.  Id. at 169.

     The Eighth Circuit applied the Urie standard in Fletcher v. Union Pacific Railroad

Co., 621 F.2d 902 (8th Cir. 1980).  In that case, the plaintiff suffered from "lumbar disc

syndrome" as a result of a work-related incident in 1962.  Id. at 907.  The Eighth Circuit

stated that "with industrial diseases, where the symptoms are not immediately

manifested, the cause of action does not accrue until the employee is aware or should be

aware of his condition."  Id. at 906 (citing Urie, 337 U.S. 163).  The court explained that

the plaintiff's cause of action did not accrue until one of two conditions was met.

Fletcher either needed to (1) receive a diagnosis, id. at 907, or (2) his chronic back pain

must have "bothered him constantly," id. at 910, n. 7.  The plaintiff was diagnosed with

"lumbar disc syndrome" several years prior to filing his lawsuit, and he had received

"extensive hospitalization and treatment" immediately after the 1962 incident, even

before he was diagnosed.  Id. at 904.  Therefore, the Eighth Circuit concluded that the

plaintiff's cause of action was barred by the FELA's three year statute of limitations.  Id. at 907.

One year before the Eighth Circuit decided Fletcher, the Supreme Court issued its opinion in United States v. Kubrick, 444 U.S. 111 (1979).  While the Fletcher Court did not cite Kubrick, several Courts of Appeals have interpreted Kubrick as refining the "discovery rule" announced in Urie.  See, e.g., Fries v. Chicago & Northwestern Transportation Co., 909 F.2d 1092, 1095-96 (7th Cir. 1990) (reading Urie and Kubrick as cases elaborating on the same "accrual" standard); Kichline v. Consolidated Rail Corp., 800 F.2d 536 (3d Cir. 1986) (same); Dubose v. Kansas City Southern Railway Co., 729 F.2d 1026, 1030 (5th Cir. 1984) (finding that "Urie signaled the inception of the discovery rule and Kubrick merely restated the rule while defining its outer limits").  In Kubrick, the plaintiff brought an action under the Federal Tort Claims Act ("FTCA") to recover for a hearing loss allegedly caused by medical malpractice in a Veterans Administration hospital.  Kubrick, 444 U.S. at 111.  The Supreme Court held that an FTCA injury accrues once a plaintiff is aware he has an injury and is aware of the cause of that injury.  Id. at 122-23.  Moreover, the Court emphasized that the plaintiff must act diligently to investigate his injury and any suspect cause.  Id. at 123.

The Eighth Circuit has not yet ruled on whether Urie and Kubrick are distinct tests for defining "accrual" under different federal laws, or whether they should be read together.[3]  Nonetheless, in this case, the parties agree that a FELA cause of action for an

---

[3]      Eighth Circuit case law on this subject has not changed since a federal district court in this Circuit noted a similar lack of precedent in Courtney v. Union Pacific

occupational disease begins to run when the plaintiff knows or reasonably should know of the existence and cause of his injury.  (Def.'s Mem. of Law at 5 [Doc. No. 10]; Pl.'s Brief in Opp'n at 18 [Doc. No. 15].)  They also agree that a plaintiff must exercise reasonable diligence to determine the cause of his injury.  (Def.'s Mem. of Law at 8 [Doc. No. 10]; Pl.'s Brief in Opp'n at 18 [Doc. No. 15].)  Therefore, the Court reads Urie and Kubrick in tandem.  Moreover, as a district court in this Circuit explained:

> even if Kubrick were read so narrowly as to only apply to medical malpractice cases brought under [the] FTCA, the court's unwillingness in Urie to bar a plaintiff's claim because of "blameless ignorance" regarding the circumstances of his injury, may also be read to implicitly require a plaintiff to understand or have reason to know of the fact of his injury and its cause. It would be impossible to even choose a defendant, let alone commence an action, without having knowledge of both.

Courtney v. Union Pacific Railroad Co., et al., 713 F. Supp. 305, 308 (E.D. Ark. 1989).

Thus, as applied to this case, to prevail on its Motion for Partial Summary Judgment, Defendant must demonstrate that Plaintiff (1) knew of his injury, and (2) knew of the cause of his injury, before October 11, 2009.

Here, the parties differ as to when Plaintiff knew that he sustained a cognizable work injury.  BNSF argues that Plaintiff "knew of his shoulder conditions," and knew that his "shoulder conditions were causally related to his railroad employment," more than three years prior to the commencement of this action.  (Def.'s Mem. of Law at 5, 8 [Doc. No. 10].)  Defendant contends that under the FELA, St. George "does not have to experience all of the symptoms of the injury" and "[a] medical diagnosis is not a

---

Railroad Co., et al.. 713 F. Supp. 305, 308 (E.D. Ark. 1989) (discussing whether Urie and Kubrick should be read together and stating that "[t]o date no cases within the Eighth Circuit have ruled on this precise point").

prerequisite to the commencement of the limitations period." (Id. at 6.) Furthermore,

Defendant alleges that "Plaintiff has an affirmative duty to investigate both the potential

problem and the potential cause of an injury." (Id.)

In opposition, Plaintiff responds that summary judgment is improper because

whether he should have known that he suffered a work-related injury before October 11,

2009 is a fact question, which is appropriate for a jury. (Pl.'s Brief in Opp'n at 20 [Doc.

No. 15].) Plaintiff points to Defendant's own medical expert, Dr. Brian Konowalchuk,

who examined Plaintiff and determined that St. George's cumulative trauma was due to

the aging process, and was not work related. (Id. at 21; Carlson Aff., Ex. 7 at 19 [Doc.

No. 16].) Citing additional authority from Courts of Appeals and state courts, Plaintiff

also argued that his symptoms were transient and intermittent, and therefore he was not

aware he had an injury until the pain prevented him from working in October, 2009. (Id.

at 23-26.)

The Urie "discovery rule" requires an objective inquiry into whether the plaintiff

knew or, in the exercise of reasonable diligence, should have known of the critical facts

of his injury and the cause of the injury.[4]  See Urie, 337 U.S. 163 (1949). The Court

finds that the evidence, read in a light most favorable to St. George, creates a genuine

---

[4]      Both parties cite additional authority from state courts and other Circuit Courts of
Appeals to bolster their arguments. Defendant relies primarily upon Fries v. Chicago &
Northwestern Transportation Co., 909 F.2d 1092 (7th Cir. 1990). (See Def.'s Mot. for
Summ. J. at 6-10 [Doc. No. 10].) While Plaintiff relies heavily upon Nichols v.
Burlington Northern & Santa Fe Ry. Co., 56 P.3d 106 (Colo. Ct. App. 2002), Green v.
CSX Transportation, Inc., 414 F.3d 758 (7th Cir. 2005), and Kennedy v. BNSF Ry.
Corp., 227 P.3d 1120 (Okla. Civ. App. 2009). (See Pl.'s Brief in Opp'n at 22-25 [Doc.
No. 15].) The Court's analysis, however, relies upon controlling Supreme Court and
Eighth Circuit precedent as it is sufficiently instructive for this fact-based inquiry.

issue of material fact as to when Plaintiff knew or should have known not only that he had suffered this cumulative shoulder injury, but also whether the injury was caused by his work at the railroad.  While St. George's shoulder pain may have begun as early as 1999 (Mewborn Aff., Ex. B at 38-39; Mewborn Aff., Ex. C at 97; Mewborn Aff., Ex. D [Doc. No. 11-1]), the pain did not prevent him from working until the last few months before he retired in December 2009 (Carlson Aff., Ex. 1 at 68-70 [Doc. No. 16]).  In fact, for years Plaintiff took ibuprofen and felt "fine."  (Carlson Aff., Ex. 1 at 69 [Doc. No. 16].)  In other words, the symptoms did not "obtrud[e] on his consciousness" until his pain prevented him from working.  See Urie, 337 U.S. at 169.

Not only was Plaintiff's pain not severe until 2009, but also St. George did not receive a diagnosis for his shoulder pain until he saw Dr. Butcher on December 8, 2009. (Mewborn Aff., Ex. D at 1-2 [Doc. No. 11-1] (diagnosing Plaintiff with "[r]otator cuff impingement with spur").)  Defendant correctly states that "[a] medical diagnosis is not a prerequisite to the commencement of the limitations period."  (Def.'s Mem. of Law at 6 [Doc. No. 10].)  Nonetheless, Plaintiff may not have been aware that his shoulder aches and pains were the result of a diagnosable injury, as opposed to general soreness due to his work position and age.  (See Carlson Aff., Ex. 7 at 19 [Doc. No. 16].)  Even Defendant's own medical expert concluded that Plaintiff's shoulder inflammation "frequently occur[s] as part of the aging process" for men and women in their 40's, 50's, and 60's, and is not work related.  (Id.)  And unlike the plaintiff in Fletcher, St. George did not receive "extensive hospitalization and treatment" for his shoulder aches before December 2009.  See Fletcher, 621 F.2d at 910 n.7.

16

The Court's purpose in reciting these alleged facts is not to evaluate the merits of the cumulative injury claim at this juncture.  Instead, these facts demonstrate that a question of when Plaintiff's "aches" became a cognizable cause of action remains a genuine issue of material fact in this case.  Other Courts of Appeals have held that "*de minimis* aches and pains are not considered to be an injury for the purposes of the FELA statute of limitations."  Granfield v. CSX Transportation, Inc., 597 F.3d 474, 483 (1st Cir. 2010) (citing Green v. CSX Transportation, Inc., 414 F.3d 785 (7th Cir. 2005)). Construing the record in favor of St. George, his shoulder pain before December, 2009 may not have put a reasonable person on notice that he suffered a cognizable injury.  The Court finds that a genuine issue of material fact exists as to when Plaintiff knew or should have known that his shoulder aches were no longer *de minimis*.  The Court cannot say, as a matter of law, that St. George should have been able to diagnose himself before he visited Dr. Butcher and submitted an Employee Personal Injury/Occupational Illness Report in December, 2009.  (See Carlson Aff., Ex. 1 at 66-67 [Doc. No. 16]; Mewborn Aff., Ex. E [Doc. No. 11].)   And as the Supreme Court explained in Bailey v. Central Vermont Ry., Inc., "[t]o deprive [railroad] workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them."  319 U.S. 350, 354 (1943).  Because Plaintiff's knowledge about the severity and cause of his shoulder injury before October 11, 2009 is a genuine issue of material fact that remains in dispute, the Court finds that summary judgment as to Count Two is denied.

## 2.   Estoppel and Statute of Limitations

In response to BNSF's Motion for Summary Judgment, Plaintiff alleges not only that a fact question remains as to when Plaintiff knew that he suffered a job-related injury, but also that a fact question exists as to whether BNSF's claim representative's discussion with Plaintiff tolled the statute of limitations.  (Pl.'s Brief in Opp'n at 27 [Doc. No. 15].)

Under the FELA, "[a] railroad is equitably estopped from asserting the statute of limitations as a defense if misrepresentations by either it or its agents caused the employee's failure to bring his action within the three-year period."  Fletcher, 621 F.2d at 906 (internal citation omitted).  The Supreme Court applied this principle in Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 232 (1959).  In Glus, the petitioner alleged that a railroad representative misled him by informing him that he could begin his action within seven years after it accrued.  359 U.S. at 231.  The Court stated that "[t]o decide the case we need look no further than the maxim that no man may take advantage of his own wrong."  Id. at 232.  Thus, the Court held that the petitioner was entitled to have his case tried on the merits if he could prove his allegation that the defendant's agents justifiably misled him about the statute of limitations.  Id. at 235.  In fact, according to the Eighth Circuit, "[t]he railroad is equitably estopped even if the misrepresentations upon which the employee relied were unintentional."  Fletcher, 621 F.2d at 906 (internal citation omitted).  However, in order for the doctrine of estoppel to apply an employee must (1) genuinely rely on these misrepresentations, and (2) the reliance must be justifiable.  Id. at 906-07; Glus, 359 U.S. at 235.

18

Here, Plaintiff alleges that Jeff Johnson, a BNSF claim representative, informed St. George that he had three years from the date he reported his injury, on December 3, 2009, to file a claim.  (Carlson Aff., Ex. 1 at 141-142 [Doc. No. 16].)  Plaintiff further alleges that he relied on that information when deciding when to file this lawsuit.  (Id.)  Therefore, St. George contends that "there is a fact question with respect to whether Defendant is equitably estopped from asserting a statute of limitations defense."  (Pl.'s Brief in Opp'n at 30 [Doc. No. 15].)  Defendant replies to Plaintiff's argument by asserting that "by the time of the alleged misrepresentations – between October and December 2009 – Plaintiff's limitations period had already expired."  (Def.'s Reply at 7 [Doc. No. 17].)  Therefore, BNSF argues that Johnson's alleged statements to Plaintiff are inapposite.  (Id.)

The Court finds that fact questions remain pertaining to whether Defendant is estopped from asserting the statute of limitations as a defense.  First, as the Glus and Fletcher Courts articulated, whether Johnson made the alleged statement to Plaintiff and whether St. George justifiably relied on this statement are questions of fact suitable for a jury.  See Glus, 359 U.S. at 235 (holding that whether or not petitioner justifiably relied on respondent's representations was a question of fact that could not "be decided at this stage of the proceedings"); Fletcher, 621 F.2d at 906-07.  Second, as the Court explained above, precisely when Plaintiff discovered he had a work related injury remains a question of fact.  If the jury determines that Plaintiff's injury accrued sometime between December 14, 2006 and December 3, 2009, then BNSF would be estopped from asserting the statute of limitations as a defense.  On the other hand, if the jury determines that

19

Plaintiff's injury accrued before December 14, 2006, then Defendant correctly notes that

Johnson's alleged statements are immaterial.  Since this determination hinges on when

Plaintiff's injury accrued, it is premature for the Court to conclude whether or not it is

inapposite that Johnson made these alleged misrepresentations.

### B.  Count III: FSAA and Identifying Specific Equipment

In Count III of his Complaint, Plaintiff asserts a claim under the FSAA.  As noted

above, the FSAA does not by its own terms "confer a right of action on injured parties."

Grogg v. Missouri Pacific Railroad Co., 841 F.2d 210, 212 (8th Cir. 1988) (citing Urie,

337 U.S. at 188).  Rather, "the [FSAA] provide[s] the basis for the claim, and the FELA

provides the remedy."  Grogg, 841 F.2d at 212.  In relevant part, pursuant to the FSAA, a

railroad carrier must only use a vehicle equipped with "couplers coupling automatically

by impact, and capable of being uncoupled, without the necessity of individuals going

between the ends of the vehicles" and "secure sill steps and efficient hand brakes."  49

U.S.C. § 20302.

Plaintiff alleges that in violation of this Act, Defendant's railcars were "equipped

with defective handbrakes and coupling mechanisms (i.e., pin lifters, knuckles and draw

bars)."  (Pl.'s Brief in Opp'n at 31 [Doc. No. 15].)  Defendant argues that Plaintiff fails to

state a claim under the FSAA because he "cannot identify any specific items or

equipment that were defective, nor can he identify any specific defects."  (Def.'s Mem. of

Law at 14 [Doc. No. 10].)

### 1.  Prima Facie Case under the FSAA

As a general rule, when analyzing a plaintiff's FSAA claim, a court must construe the Act liberally.  In Lilly v. Grand Trunk Western Railroad Co., the Supreme Court stated the FSAA should "be liberally construed in the light of its prime purpose, the protection of employees and others by requiring the use of safe equipment."  317 U.S. 481, 486 (1943).  Similarly, in Urie, the Court explained that just like the FELA, the FSAA and the Locomotive Inspection Act, another railroad safety statute, should be read liberally in order to not restrict an injured employee's recovery.  337 U.S. at 189.  To recover for a violation of the FSAA, St. George must show "(1) the statute was violated; and (2) the violation was a causative factor contributing in whole or in part to the accident that caused [his] injuries."  Grogg, 841 F.2d at 212 (internal citation omitted).  An injured employee is "required to prove only the statutory violation and thus is relieved of the burden of proving negligence."  Crane v. Cedar Rapids & Iowa City Railway Co., 395 U.S. 164, 166 (1969) (explaining the level of proof required under the FSAA).

In order to demonstrate that the statute was violated, St. George may prove evidence of an inefficiency through "some particular defect," or by showing that an appliance "fail[ed] to function, when operated with due care, in the normal, nature and usual manner."  Myers v. Reading Co., 331 U.S. 477, 483 (1947).  In Myers v. Reading Co., the United States Supreme Court clarified that "[p]roof of an actual break or visible defect […] is not a prerequisite to a finding that the statute has been violated."  Id.  The Court explained that "[t]he test in fact is the performance of the appliance."  Id.

21

Suggesting that, as long as "there is proof that the mechanism failed to work efficiently and properly," a plaintiff will have sufficient proof that the FSAA was violated.  Id.

Although the Court must construe the FSAA liberally, the Supreme Court's and Eighth Circuit's tests for determining liability under the FSAA clearly presuppose that a plaintiff is able to identify which piece of equipment is allegedly inefficient.  In Coleman v. Burlington Northern, Inc., the Eighth Circuit clarified a plaintiff's burden of proof by stating that "if [an appliance] fails to operate properly and injury thereby results, liability is imposed no matter what the railroad may have done to insure its proper operation." 681 F.2d 542, 544 (8th Cir.1982).  The court's test assumed that the plaintiff could identify the inefficient appliance being challenged.  See also Grogg, 841 F.2d at 212 (holding that to prove train equipment violated the FSAA, the plaintiff could show evidence of either "some particular defect," or "a failure to function, when operated with due care, in the normal, natural, and usual manner") (cited by Burlington Northern R.R. Co. v. Farmers Union Oil Co. of Roll, 207 F.3d 526, 532 (8th Cir. 2000)).  Thus, while the "plaintiff need not identify a specific defect," he must still identify a specific piece of equipment covered by the FSAA which he alleges is defective.  See Myers, 331 U.S. at 483; see Chicago, St. P., M. & O. Ry. Co. v. Muldowney, 130 F.2d 971, 975 (8th Cir. 1942) (finding that "[t]he test of compliance [under the FSAA] is the operating efficiency of the [safety device] with which the car is equipped").

As to the causation element of a plaintiff's FSAA claim, a plaintiff is "entitled to recover if this defective equipment was the sole or a contributory proximate cause" of the injury.  Coray v. Southern Pacific Co., 335 U.S. 520, 522-23 (1949); see Crane, 395 U.S.

at 166 (holding that under the FSAA a plaintiff "is not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the Act").  Furthermore, pursuant to the SAA, the defendant railroad "is deprived of the defenses of contributory negligence and assumption of risk." Crane, 395 U.S. at 166.

Plaintiffs alleging cumulative trauma injuries are held to the same standard.  In Tezak v. BNSF Railway Co., the Washington district court relied in part on the Eighth Circuit's Muldowney case and held that although the plaintiff's FSAA claim was based on a cumulative trauma injury, he still had to allege a specific defect with a specific piece of equipment in order to survive summary judgment.  No. C09-05212BHS, 2010 WL 3211693, at *2 (W.D. Wash. Aug. 12, 2010) (citing Muldowney, 130 F.2d at 975).  The court explained that if the plaintiff was "unable or unwilling to identify the particular devices operating on particular in-use rail cars, then [the defendant] has no reasonable way to defend itself against such an allegation, other than a simple denial."  Id.  The court granted the defendant's motion for summary judgment because the plaintiff merely alleged that he "encountered" rail cars that violated the FSAA, and he provided no particularity about which cars were problematic or what equipment on the cars was defective.  Id. at *1-2.

The Minnesota Court of Appeals reached a similar outcome in O'Neill v. BNSF Railway Co., No. A10-1987, 2011 WL 4008276 (Minn. Ct. App. Sept. 12, 2011).  In O'Neill, the plaintiff also alleged a cumulative trauma claim under the FSAA.  Id. at *1. The plaintiff "admitted that he was unable to identify any specific piece of defective

railroad equipment or identify any particular instance when he used a defective appliance or when a railroad component failed to perform." Id. at *4. As a result, the Minnesota Court of Appeals affirmed the lower court's directed verdict and held that the plaintiff's "failure to identify any specific defective device prevented [the defendant] from defending itself by proving that the device was working properly." Id. at *5. By not alleging a specific defective device, the plaintiff "deprived the jury of a fact issue as to whether [the defendant] violated the FSAA." Id. Thus, a plaintiff claiming a cumulative injury must also identify specific equipment that allegedly caused his injury.

## 2. Identifying the Specific Equipment

When identifying the piece of equipment that allegedly caused the injury, the plaintiff need not always be precise. For instance, in Strickland v. Norfolk Southern Railway Co., the Eleventh Circuit held that Strickland's FSAA claim survived summary judgment even though he could not precisely identify the rail car that caused his injury. 692 F.3d 1151, 1158 (11th Cir. 2012). The plaintiff alleged that on July 23, 2009, he suffered a shoulder injury from a faulty handbrake. Id. at 1155. Although he was unable to identify the particular rail car on which he was injured, he knew it was a "tank car," and he "contended that it was possible for Norfolk Southern, by reference to a Switch List, to narrow down the possible number of rail cars that could have been involved." Id. at 1155 n. 5. The court distinguished Strickland's case from O'Neill by explaining that (1) the procedural posture of the cases differed, and (2) the substance of the plaintiffs' claims differed. Id.

As to the procedural posture, the Eleventh Circuit aptly noted that although the O'Neill Court affirmed the district court's grant of a directed verdict on the plaintiff's FSAA claim, his claim had survived summary judgment. Id. (citing O'Neill, 2011 WL 4008276, at *3). It was only once all evidence was presented to the jury that the O'Neill Court determined that the plaintiff had failed to adequately identify any specific defective devices, and held that it was proper to grant the defendant's motion for a directed verdict. O'Neill, 2011 WL 4008276, at *6. Applying this reasoning to Strickland's claim, the Eleventh Circuit held that at this stage of the proceedings Strickland had also presented enough evidence to survive summary judgment. Strickland, 692 F.3d at 1155.

Regarding the substance of the plaintiffs' claims, the Eleventh Circuit explained that the directed verdict was likely affirmed because while O'Neill's allegations were based on the cumulative effects of working on the railroad, he had no documentation showing he ever complained of the equipment that allegedly caused him injury, nor did he ever notice or report any pain in his shoulder until after he stopped working. Id. (citing O'Neill, 2011 WL 4008276, at *1). In contrast, Strickland was able to sufficiently narrow down which rail car was allegedly defective. See id. at 1159. By identifying a specific date and time of the injury and the type of the rail car involved ("tank car"), Strickland made sufficient "specific allegations," which O'Neill failed to make. Id. Therefore, if a plaintiff alleging a FSAA violation can sufficiently narrow down which piece of equipment was allegedly defective, then his claim should survive summary judgment.

### 3.  Analysis of St. George's SAA claim

Defendant's Motion for Summary Judgment on St. George's FSAA claim fails.
As noted above, summary judgment is proper if, drawing all reasonable inferences in
favor of Plaintiff, there is no genuine issue as to any material fact and Defendant is
entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at
322–23; Anderson, 477 U.S. at 249–50.  In order to survive summary judgment on his
FSAA claim, Plaintiff must allege facts demonstrating that he worked with and was
injured by inefficient equipment that is subject to the FSAA.  See Strickland, 692 F.3d at
1158; Myers, 331 U.S. at 483; Coleman, 681 F.2d at 544; Grogg, 841 F.2d at 212.

St. George claims that Supreme Court precedent does not require him to identify
"a specific car equipped with an inefficient safety appliance."  (Pl.'s Brief in Opp'n at 34
[Doc. No. 15].)  The Court agrees.  In Myers, the Supreme Court explained that a
defendant is liable under the FSAA if the jury can reasonably infer that a piece of
equipment on the defendant's railroad was inefficient or defective.  331 U.S. at 482-83.
The Court stated that a plaintiff may either present evidence of a particular defect with
that equipment, or demonstrate that the equipment failed to work in its "normal, natural,
and usual manner" even though plaintiff operated it with due care.  Id.  While the Myers
Court presupposed that the plaintiff could identify which piece of equipment had injured
him, the Court did not require the plaintiff to identify the rail car to which the defective
equipment was attached.  See id.  In fact, the Eleventh Circuit reiterated this standard in
Strickland when it held that the district court had misconstrued the issue before it at
summary judgment.  692 F.3d at 1158.  Instead of asking "whether there was evidence of

26

an inefficient handbrake," the district court mistakenly "considered whether Strickland's failure to identify the rail car was fatal to his claim." Id. Thus, although Plaintiff concedes that "he is unable to identify the specific railcars," which caused the cumulative injuries that Plaintiff alleges, he is not required to in order to survive summary judgment. (Pl.'s Brief in Opp'n at 31 [Doc. No. 15].)

Even though Plaintiff claims he was injured from the cumulative trauma of working as a switchman and brakeman for BNSF, he must still identify particular pieces of equipment that were allegedly defective. Tezak, 2010 WL 3211693, at *2 (citing Muldowney, 130 F.2d at 975); O'Neill, 2011 WL 4008276, at *5. Here, St. George has presented sufficient evidence alleging that he worked with and was injured by specific defective equipment covered by the FSAA. (Pl.'s Brief in Opp'n at 31 [Doc. No. 15].) Plaintiff's FSAA claim is based primarily on allegedly defective couplers, pinlifters, air hoses, and hand brakes. Although Plaintiff could not identify the precise car number that had these defective pieces of equipment, he was able to limit the search to a particular set of cars. For instance, in his response to Defendant's Interrogatories he stated that the "[p]aper box cars with cushioned underframes and three bars on the pinlifters" had the defective pinlifters attached. (Carlson Aff., Ex. 2 at 3 [Doc. No. 16].) Additionally, he stated that the cars which had defective air hoses were "the ADM cars with the UELX numbers, Allrail older coal cars and what they call battleships." (Id. at 4.) Moreover, Plaintiff alleges that every time he encountered a car with a defective handbrake with a short release handle, a defective railcar coupler, defective handbrakes, defective

27

pinlifters, or defective air hoses, he reported the cars to the yardmaster and carman on duty.  (Carlson Aff., Ex. 2 at 2-4 [Doc. No. 16].)

Plaintiff's effort to narrow down the possible number of rail cars that could have been involved is sufficiently similar to the plaintiff's effort in Strickland.  Like the plaintiff in Strickland, St. George is able to identify the type of rail car that was involved for much of the defective equipment.  Strickland, 692 F.3d at 1155.  Moreover, St. George also contends it is possible to further narrow down the relevant rail cars by referring to Defendant's records.  Id. at 1155 n. 5; (See Carlson Aff., Ex. 2 at 2-4 [Doc. No. 16].)  At this stage of the proceedings, Plaintiff adequately limits the particular subset of railcars that had the allegedly defective appliances.  See O'Neill, 2011 WL 4008276, at *6 (explaining that a plaintiff's failure to identify a specific defective device was insufficient to grant defendant's motion for summary judgment, but was a sufficient basis to grant defendant's motion for a directed verdict).

Defendant contends that Plaintiff's case is similar to Tezak, O'Neill, and Boyd, cases which also involve cumulative injury claims alleged by plaintiffs under the FSAA (Def.'s Mem. of Law at 12 [Doc. No. 10].)  The Court disagrees.  Unlike the plaintiff in Tezak who merely alleged that he "encountered" rail cars that violated the FSAA, here St. George alleges specific pieces of equipment and appliances that were defective and unsafe.  (See Carlson Aff., Ex. 2 at 2-4 [Doc. No. 16].)  Furthermore, he is able to identify the series the locomotives that allegedly had the defective equipment.  (Id.)

Plaintiff's case is also distinguishable from O'Neill.  In that case, the court affirmed the district court's grant of a directed verdict on the plaintiff's FSAA claim.

28

O'Neill, 2011 WL 4008276, at *1.  The court based its holding on the fact that (1) the plaintiff did not narrow down which specific piece of defective equipment caused his injuries, (2) the plaintiff "could not identify any injury he suffered from using a specific piece of equipment at any specific time," (3) "[the plaintiff] never complained about any equipment" to the defendant railroad, and (4) the plaintiff also testified that "he had no symptoms until about a decade after he stopped using the allegedly defective equipment." Id. at *4.  In contrast, (1) St. George was able to narrow down which series of rail cars likely had the defective equipment, (Carlson Aff., Ex. 2 at 2-4 [Doc. No. 16]); (2) he alleges that his injury was caused by moving on and off equipment, as well as operating switches, hand brakes, pinlifters, couplers, and other equipment, (Mewborn Aff., Ex. A at 1-2, 3-4 [Doc. No. 11-1]; Carlson Aff., Ex. 2 at 4 [Doc. No. 16]); (3) he reported appliance defects every time he encountered them, (Carlson Aff., Ex. 2 at 2-4 [Doc. No. 16]); and (4) he maintains that his shoulders began aching while he was still working (Carlson Aff., Ex. 1 at 68-70 [Doc. No. 16]).

St. George's case is also distinguishable from the plaintiff's cumulative injury FSAA claim in Boyd.  In Boyd, the Minnesota Court of Appeals granted the defendant's motion for summary judgment because the plaintiff could not prove the causation element of his case.  The court explained that nothing in the record indicated that moving an allegedly non-complying railcar *caused* the plaintiff to slip on a ladder while the train was stationary.  Boyd, 2013 WL 3367421, at *5 (emphasis added).  Here, however, Defendant does not question the causation element of St. George's claim.

29

Instead, Plaintiff's case is more akin to <u>Munns v. CSX Transportation, Inc.</u>, 579 F. Supp. 2d 924 (N.D. Ohio 2008). <u>Munns</u> supports "[St. George's] position that a cumulative-trauma fact pattern can, in some cases, establish a fact issue under the FSAA." <u>O'Neill</u>, 2011 WL 4008276, at *5. In <u>Munns</u>, the plaintiff brought a cumulative injury claim pursuant to the Locomotive Inspection Act ("LIA").[5] 579 F. Supp. 2d at 928. Evidence of his claim included entries in his personal time-books that noted the occasions when he rode in a locomotive with a defective seat. <u>Munns</u>, 579 F. Supp. 2d at 928. Munns also submitted locomotive worksheets to his employer indicating when he encountered defective seats. <u>Id.</u> Additionally, he identified a specific series of locomotives that he believed had the defective seats on board. <u>Id.</u> The plaintiff could not, however, "specify any *particular* locomotives with defective seats." <u>Id.</u> (emphasis added).

---

[5]     Although the Court agrees with Defendant that railroads have a broader duty under the LIA than under the SAA, the Court disagrees with BNSF's assertion that LIA cases are inapposite to Plaintiff's case. (<u>See</u> Def.'s Reply at 8 [Doc. No. 17].) In many respects, a court's analysis for evaluating a FSAA or a LIA claim is fairly similar. In fact, in <u>O'Neill</u>, a case that Defendant relies on heavily in its brief (Def.'s Mem. of Law at 11-12, 14 [Doc. No. 10]), the Minnesota Court of Appeals offered a similar observation. The court explained that "[l]ike the FSAA, the LIA is an amendment to FELA that imposes an absolute duty on interstate railroads to provide safe equipment and allows claimants to bring suit under FELA if a safety violation causes injury. FSAA and LIA cases apply similar reasoning." <u>O'Neill</u>, 2011 WL 4008276, at *4 n. 1 (citing <u>Steer v. Burlington Northern, Inc.</u>, 720 F.2d 975, 977 (8th Cir. 1983)).

BNSF argues that LIA case law is irrelevant because plaintiffs bringing claims under the LIA are not required to identify a specific piece of equipment that allegedly caused their injury. (Def.'s Reply at 8 [Doc. No. 17].) The Court need not decide whether a court's analysis under the LIA presupposes that the plaintiff can identify a specific piece of equipment that is allegedly defective. Instead, the Court acknowledges that St. George must allege a defect with a specific piece of equipment in order to state a claim under the FSAA. Thus, the Court proceeds by relying on LIA case law only insofar as the analysis is analogous to FSAA analysis.

St. George has presented similar evidence substantiating his claim to the Court. Like Munns, St. George identified a series of locomotives which he believes had defective coupling equipment. (Carlson Aff., Ex. 2 at 3-4 [Doc. No. 16] (identifying the ADM series with the UELX numbers, or the rail cars which were colloquially referred to as "battleships," as well as paper box cars with cushioned underframes that had three bars on the pinlifters).) Furthermore, similar to Munns, St. George placed BNSF on notice of its allegedly defective equipment. Plaintiff contends that every time he worked with a defective appliance he reported it to the trainmaster on duty. (Carlson Aff., Ex. 2 at 2-4 [Doc. No. 16].) While Plaintiff does not allege that he kept a written record or submitted written complaints to his employer, the Court finds that his oral complaints effectively put Defendant on notice. Id. at 928-29; cf. O'Neill, 2011 WL 4008276, at *5 (affirming the directed verdict on plaintiff's FSAA claim because the plaintiff did not keep records *and* never complained about his work conditions until after he stopped using the allegedly defective equipment).

Even if Plaintiff is unable to present documentary evidence to corroborate his claim that he reported all defective equipment to trainmasters on duty, he can testify to the jury about his oral reports. It is then the jury's role to weigh the credibility of his testimony, not the Court's. See Anderson, 477 U.S. at 255 (explaining that the fact finder must make credibility determinations about testimony). Therefore, construing all facts in favor of Plaintiff, the Court finds that Plaintiff has presented sufficient evidence to create a genuine issue of fact that defective appliances caused his injuries.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant BNSF Railway's Motion for Summary Judgment [Doc. No. 8] is **DENIED**, consistent with this Order.

2. This matter is scheduled for trial on January 12, 2015 at 9 am.  It is one of three matters so scheduled.  A separate Trial Notice and Final Pretrial Order will follow.


Dated:  October 7, 2014                          s/Susan Richard Nelson
                                                 SUSAN RICHARD NELSON
                                                 United States District Judge